UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES OF AMERICA, ) | CRIM. NO. 04-30046-MAP |
| ) | |
| vs.                         ) | |
| ) | |
| CARMEN ROMEO,               ) | |
| ) | |
| Defendant.  ) | |

GOVERNMENT'S SENTENCING MEMORANDUM
AND RESPONSE TO OBJECTIONS 1, 5 AND 6

The United States of America, through Michael J. Sullivan, United States Attorney for the District of Massachusetts, and William M. Welch II, Assistant United States Attorney, hereby files this Sentencing Memorandum and Response to Objections 1, 5 and 6.

The defendant should be held fully accountable for the entire amount of money, including the medical expenses, expended by Commerce Insurance Company, or a total of $27,300.00. The reason is because the defendant knew that the defendant actually suffered no injury from his automobile accident, yet actively assisted in perpetrating the fraud on the insurance company.

I.  **The Accident**

Todd Illingsworth began working as a commercial painter at Vincent Romeo Painting Co. in May, 1999 and worked there through at least 2002. Carmen Romeo is the president of the painting company. Penelope Romeo handles the books and records; she is

1

also Carmen's wife. Mark Romeo is the vice-president and Carmen Romeo's brother. Illingsworth is married to Carmen Romeo's cousin.

Illingsworth worked from 7 a.m. to 3 p.m. as a commercial painter. His duties included carrying ladders, climbing up and down ladders and carrying forty pound pails of paint. See Exhibit A (Grand Jury Testimony of Mark Romeo). Illingsworth also self-reported to the MVA Rehabilitation Center, where Illingsworth subsequently received therapy sessions, that his work as a commercial painter required "frequent repetitive movements" and lifting as much as "50+ lbs." See Exhibit B (MVA Center Medical History Sheet for Todd Illingsworth).

From May, 1999, through July, 2000, Illingsworth also had a second job working at MCDI. MCDI is a quasi-public/private entity that offers career development and training services to individuals, the majority of whom are on public assistance. Illingsworth allegedly worked from 3:30 p.m. to 8 p.m. as a maintenance worker at MCDI five days per week.

On January 18th, 2000, at 7:00 a.m., while driving to his work site, Illingsworth was involved in a fender-bender in Ludlow, Massachusetts. The other driver stated that he and Illingsworth exchanged information and went on their ways. The other driver reported that the damage to both cars was minimal. A report from the Ludlow Police Department, who had been called

by a third party, stated that both cars had left the scene upon their arrival.

Illingsworth went to work and worked a full eight hour day on January 18th, 2000. That evening, Illingsworth went to Baystate Medical Center at 7:55 p.m. and reported that he hurt his back in a car accident earlier that day. Illingsworth stated that his back became progressively tighter and sorer as he worked throughout the day. Illingsworth returned to work and worked two more, full eight hour days on January 19th, 2000, and January 20th, 2000. See Exhibit C (Grand Jury Testimony of Mark Romeo).

Original photographs of the damage to Illingsworth's truck were obtained from Illingsworth's personal injury lawyer. These photographs were taken on January 20, 2000, just two days after the accident. The photographs show that Illingsworth's rear fender was slightly bent at the corner. See Exhibit D (Original Photographs of Vehicle Damage). It is from this accident flowed "necessary and reasonable" medical expenses, see Pre-Sentence Report, p. 28, and which forms the basis for a personal injury settlement claim that "did indeed have a settlement value." See Pre-Sentence Report, p. 29.

The injury allegedly suffered by Illingsworth was a back injury based entirely on Illingsworth's self-reporting. No physician was ever been able to verify the injury diagnostically. It was this back injury that allegedly kept Illingsworth out of

work. It was this back injury that caused Commerce Insurance Company to pay $27,300.00 on this claim.

II. **The Back Injury**

Beginning on January 24th, 2000 and lasting through June 15th, 2000, Illingsworth reported to the job site and performed his duties as a commercial painter for the Vincent A. Romeo Painting Co. He carried ladders, climbed up and down ladders, painted, and carried forty to fifty pound buckets of paint. Carmen Romeo knew that Illingsworth really did not have a back injury because he saw Illingsworth perform all of his work and paid Illingsworth for this work.

Not only did Illingsworth work as a commercial painter for Vincent A. Romeo Painting Co., but Illingsworth also plowed MCDI's parking lots during the winter. Illingsworth submitted invoices to MCDI for snowplowing on January 21st, January 26th, January 31st, February 4th, February 9th, February 18th, February 19th, and February 20th. Illingsworth's invoices stated that he spent on average six hours plowing MCDI's lots. See Exhibit E (Snowplowing Invoices).

The "reasonable and necessary" medical expenses that Illingsworth allegedly incurred primarily resulted from his Baystate Medical Center visit and therapy sessions for his "back injury" at the MVA Rehabilitation Center. However, Illingsworth was a no-show for so many physical therapy sessions that the

rehabilitation center placed him on an attendance contract. See Exhibit F (Cancelled or No-Show Sessions); See Exhibit G (Attendance Contract). In fact, a comparison of some of the no-shows, such as on February 4th and February 18th, showed that Illingsworth did not attend the therapy sessions so that he could earn money plowing snow instead.

### III. The Claim

Therefore, Commerce Insurance Company paid medical expenses and settled Illingsworth's claim largely because of a fraudulent, non-existent back injury. Carmen Romeo facilitated that fraud by not only sending Commerce Insurance a fraudulent wage form, but also by knowing that Illingsworth's back injury was a fraud and concealing that fact. In other words, Carmen Romeo now seeks restitution mitigation for expenses relating to a fraudulent, non-existent injury whose existence Carmen Romeo helped conceal.

To add insult to injury, Illingsworth and his lawyer took other individuals as well. On January 2, 2001, Illingsworth and his lawyer received Commerce Insurance Company's settlement. Rather than pay the full amount of the outstanding bill, Illingsworth and his lawyer falsely told two medical car providers that he did not have the money to pay his outstanding medical bills. When the two medical providers agreed to settle for approximately 30% less than they had billed, Illingsworth's lawyer passed the "savings" back to Illingsworth. See Exhibit H.

## IV. Conclusion

Nothing but greed motivated this crime. It motivated not only Illingsworth, but also served to be the catalyst for Carmen Romeo. Carmen Romeo helped Illingsworth commit insurance fraud not only by submitting the largest "lost wages" form, but then helped the fraud succeed by concealing Illingsworth non-existent injury. Carmen Romeo then obstructed justice to help Illingsworth and himself. In summary, Carmen Romeo engaged in fraud and obstructed justice because he wanted to help Illingsworth make money and then keep it.

The most effective message in these types of financial crimes that a court can send to the general public and Carmen Romeo is not to impose a lesser restitution, but to impose the maximum restitution and a maximum fine.

Ultimately, Carmen Romeo intends to re-employ Illingsworth when he gets out of prison. Carmen Romeo can re-coup any amount of the restitution and the fine by withholding money from Illingsworth's paychecks. That is why the sentence also must include a stiff term of imprisonment.

Filed this 8th day of December, 2004.

Respectfully submitted,

MICHAEL J. SULLIVAN
United States Attorney

_____
WILLIAM M. WELCH II
Assistant United States Attorney

## CERTIFICATE OF SERVICE

Hampden, ss.                                  Springfield, Massachusetts
                                              December 8, 2004


    I, William M. Welch II, Assistant United States Attorney, hereby certify that a true copy of the above document was served by fax and mail upon:

Michael Jennings, Esq.
73 Chestnut
Springfield, MA   01103

                                                   _____
                                                   WILLIAM M. WELCH II
                                                   Assistant United States Attorney

```
                                                              1
                                                              I
                                                           1 - 95
```

UNITED STATES DEPARTMENT OF JUSTICE

OFFICE OF THE UNITED STATES ATTORNEY

DISTRICT OF MASSACHUSETTS

---

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>        VS.<br><br>JOHN DOE. | Case No. |

```
                          Federal Grand Jury
                          U.S. Courthouse
                          1550 Main Street
                          Springfield, Massachusetts

                          Thursday
                          March 21, 2002
```

APPEARANCE:   WILLIAM M. WELCH
              Assistant U.S. Attorney

WITNESS:      MARK ROMEO

*APEX Reporting*       **ORIGINAL**
(617) 426-3077



GOVERNMENT EXHIBIT A

ROMEO - 03/21/02                                              44

1  day for work, Monday through Friday?
2       A    Yes.
3       Q    And Todd Illingsworth worked as a painter every
4  day, Monday through Friday, during the year 2000?
5       A    Yes.  I mean, he could have missed some days for,
6  you know, for being sick and stuff.
7       Q    But absent an occasional sick day, maybe a two or
8  three day vacation period--
9       A    Yes--
10      Q    --he was there at work every day working as a
11 painter?
12      A    Yes.
13      Q    And working as a painter entails not only lifting
14 ladders and things like that; is that correct?
15      A    Yes.
16      Q    It also means having to haul around these big
17 5 gallon buckets of paint; correct?
18      A    Um-hum.
19      Q    And -- is that a yes?
20      A    Yes.
21      Q    And how, how much do those weigh?
22      A    Depends on the material.
23      Q    Let's just talk about latex paint.
24      A    Forty pounds, 35 pounds.
25      Q    During this period of time, did you ever notice

*APEX Reporting*
(617) 426-3077

1   Todd Illingsworth not being able to perform his duties as a
2   painter?
3        A    No.
4        Q    So, is it accurate to say that you never knew Todd
5   Illingsworth to be out of work due to personal injury for a
6   period of four months in the year 2000?
7        A    Can you rephrase that again, say that again?
8        Q    How about if I just put it this way.  That
9   sentence in your brother's letter, Todd Illingsworth was out
10  of work due to personal injury for a period of four months
11  in the year 2000, is false?
12       A    To my knowledge, it is.

# MVA CENTER FOR REHABILITATION

### PAST MEDICAL HISTORY PAGE TWO

**HISTORY OF NECK PAIN:** (NO)  YES  1-2 episodes  intermit  chronic  #years/date:_____
 CAUSE:_____
 TREATMENT:_____  DATES: __/__/__ - __/__/__  AT PRES: Y N
 RESIDUAL:_____  INTERFERENCE W/ACTIVITY OF DAILY LIVING: Y N

**HISTORY OF BACK PAIN:** NO  (YES)  1-2 episodes  intermit  chronic  #years/date:_____
 CAUSE: Hockey player
 TREATMENT: Chiropractor  DATES: 2-3 weeks 1999  AT PRES: Y (N)
 RESIDUAL: ∅  INTERFERENCE W/ACTIVITY OF DAILY LIVING: Y N

**HISTORY OF HEADACHES:** (NO)  YES  1-2 episodes  intermit  chronic  #years/date:_____
 CAUSE:_____
 PHOTOPHOBIA: Y  N  N  V:  ALWAYS  OCCASIONALLY  RARE  NEVER  INTERFERENCE W/ACTIVITY OF DAILY LIVING: Y N
 TREATMENT:_____  DATES: __/__/__ - __/__/__  AT PRES: Y N

**MEDICINES:** ∅

**MEDICINES SINCE THE MVA:** Ibuprophen - Muscle Relaxer

**ALLERGIES/SENSITIVITIES:** ∅

**ROS:** ∅   (2) City of Springfield → Public School Commons
            Part time job 20 hrs/week
            D.O.A → present

**OCCUPATION:** (1) Painter (Commercial Spray Painting)    **COMPANY:** Romeo Painting
 FREQUENT REPETITIVE MOVEMENTS: (Y)  N
 LIFTING: AMOUNT: 50+ lbs   HOW OFTEN: during work    AMOUNT:_____  HOW OFTEN:_____
 ACTIVITY: SITTING (STANDING) DRIVING-COMMUTE ONE WAY: Varies - 30"    MISSED WORK SINCE MVA: Y N  01/18/01 - 3 days   NO WORK
 HOURS/DAY: 7am - 3pm    DEPENDENT CHILDREN Y (N) AGES:_____    HELP NEEDED: Y  N

WCPCPMHX/FORMS/042398

GOVERNMENT EXHIBIT B

1

I
1 - 95

UNITED STATES DEPARTMENT OF JUSTICE

OFFICE OF THE UNITED STATES ATTORNEY

DISTRICT OF MASSACHUSETTS

| UNITED STATES OF AMERICA, | |
|---|---|
| VS. | Case No. |
| JOHN DOE. | |

Federal Grand Jury
U.S. Courthouse
1550 Main Street
Springfield, Massachusetts

Thursday
March 21, 2002

APPEARANCE:   WILLIAM M. WELCH
              Assistant U.S. Attorney

WITNESS:      MARK ROMEO

APEX Reporting
(617) 426-3077

ORIGINAL


GOVERNMENT EXHIBIT C

```
15      Q    No. 8-MR is one of these weekly payroll reports
16  forms that would go to the general contractor, in this
17  particular instance, the Fontaine Brothers, for the Ludlow
18  job; correct?
19      A    Yes, sir.
20      Q    And it shows who worked at the Ludlow job for the
21  weekend ending January 20, 2000; correct?
22      A    Yes, sir.
23      Q    And it shows that Todd Illingsworth was working on
24  the Ludlow job on Friday, the 14th; correct?
25      A    Yes, sir.
```

1    Q    Monday the 17th; correct?
2    A    (No verbal response.)
3    Q    You have to say yes.
4    A    Yes, sir.
5    Q    Tuesday the 18th; correct?
6    A    Yes, sir.
7    Q    Wednesday, the 19th; correct?
8    A    Yes, sir.
9    Q    And Thursday, the 20th; correct?
10   A    Yes, sir.
11   Q    And it shows that he worked a full eight hours
12   each one of those days; correct?
13   A    Yes, sir.
14   Q    Whose handwriting appears on this form?
15   A    I believe this is Carmen's, my brother.
16   Q    And you also were listed as being at the Ludlow
17   job; correct?
18   A    Yes, not all the time, but m -- some of the time.
19   I just--
20   Q    And--
21   A    We -- okay, go ahead.
22   Q    Go ahead.  Explain?
23   A    No.  I just, I'd be at, sometimes I'd be there,
24   sometimes I'd be somewhere else.  It just depended--
25   Q    Okay--









**TODD ILLINGSWORTH**
**193 CHALMERS STREET**
**SPRINGFIELD, MA 01118**

DATE: 1/28/2000

Bill to: M.C.D.I
140 Wilbraham Ave
Spf'd, MA

SERVICES RENDERED:

Snow removal, sanding and salting at Lots A, B, C Annie's House

Snow removal: hours and rate 6 hrs — Cost: $700.00

Salting and sanding: hours and yards _____ _____ Cost: _____

Inches of snow: 5 inches

Date services rendered: 1/21/2000   Total: $700.00



GOVERNMENT EXHIBIT E

**TODD ILLINGSWORTH**
**193 CHALMERS STREET**
**SPRINGFIELD, MA 011118**

DATE: 1/30/2000

Bill to: M.C.D.I.
140 Wilbraham Ave
Spfld, MA.

SERVICES RENDERED:

Snow removal, sanding and salting at _____

Snow removal: hours and rate  10 hrs  —  Cost: $900.00

Salting and sanding: hours and yards _____  _____ Cost: _____

Inches of snow: 6 inches

Date services rendered: 1/26/2000   Total: $900.00

Case 3:04-cr-30036-MAP     Document 8     Filed 12/08/2004     Page 18 of 20

**TODD ILLINGSWORTH**
**193 CHALMERS STREET**
**SPRINGFIELD, MA 011118**

DATE: 2/5/2000

Bill to: M.C.D.T.
140 Wilbraham Ave
Spfld, MA

## SERVICES RENDERED:

Snow removal, sanding and salting at _Lots A, B, C, Main House_

Snow removal: hours and rate _7 hr_      Cost: _$700.00_

Salting and sanding: hours and yards _____ _____ Cost: _____

Inches of snow: _5 inch_

Date services rendered: _1/31/2000_     Total: _$710.00_

**TODD ILLINGSWORTH**
**193 CHALMERS STREET**
**SPRINGFIELD, MA 011118**

DATE: 2/8/2000

Bill to: M.C.D.T
140 Wilbraham Ave
Spfld MA

SERVICES RENDERED:

Snow removal, sanding and salting at _Lots A, B, C Annies house_

Snow removal: hours and rate _6 hrs_ _____ Cost: _700.00_

Salting and sanding: hours and yards _____ _____ Cost: _____

Inches of snow: _4 inches_

Date services rendered: _2/4/2000_  Total: _700.00_

**TODD ILLINGSWORTH
193 CHALMERS STREET
SPRINGFIELD, MA 01118**

DATE: 2/21/2000

Bill to: MOOI
140 Wilbrham Ave
Spfld, MA

SERVICES RENDERED:

Snow removal, sanding and salting at  Lots A, B, C Annies house

Snow removal: hours and rate  14 hrs  (2X)  Cost: $1400.00

Salting and sanding: hours and yards _____ _____ Cost: _____

Inches of snow: 12 inches

Date services rendered: 2/18  2/19   Total: $1400.00