UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Crim. No. 04-30046-MAP

UNITED STATES OF AMERICA

vs.

CARMEN ROMEO

SENTENCING MEMORANDUM RE: RESTITUTION

Pursuant to the Plea Agreement between the government and the defendant, the defendant is obligated to pay "full restitution" for the loss occasioned by an insurance fraud related to the instant charge. The Premier Insurance Company is claiming a loss in the amount of $25,100.00 which represents the balance of $18,500.00 paid to Todd Illingsworth (the claimant) in settlement of the claim against the insurance company's insured (who was solely responsible for the rear end collision) and $6,600.00 in payments made to Commerce Insurance Company as subrogation for its payment to Mr. Illingsworth of so called PIP payments for fraudulently alleged lost wages. The Commerce Insurance Company appears to have falsely alleged under the pains and penalties of perjury that it lost a total of $8,000.00. In paragraph 2 of the "Victim Financial Loss Statement" one Brian Schofield fails to acknowledge the $6,000.00 subrogation payment that Premier alleges it paid to Commerce. Commerce also alleges it lost $1975.72 in no fault medical payments. The Pre-Sentence Report concludes in paragraph (89) that Commerce has suffered no loss because of the subrogation and is not entitled to reimbursement for the no fault

UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

Crim. No. 04-30046-MAP

UNITED STATES OF AMERICA

vs.

CARMEN ROMEO

SENTENCING MEMORANDUM RE: RESTITUTION

Pursuant to the Plea Agreement between the government and the defendant, the defendant is obligated to pay "full restitution" for the loss occasioned by an insurance fraud related to the instant charge. The Premier Insurance Company is claiming a loss in the amount of $25,100.00 which represents the balance of $18,500.00 paid to Todd Illingsworth (the claimant) in settlement of the claim against the insurance company's insured (who was solely responsible for the rear end collision) and $6,600.00 in payments made to Commerce Insurance Company as subrogation for its payment to Mr. Illingsworth of so called PIP payments for fraudulently alleged lost wages. The Commerce Insurance Company appears to have falsely alleged under the pains and penalties of perjury that it lost a total of $8,000.00. In paragraph 2 of the "Victim Financial Loss Statement" one Brian Schofield fails to acknowledge the $6,000.00 subrogation payment that Premier alleges it paid to Commerce. Commerce also alleges it lost $1975.72 in no fault medical payments. The Pre-Sentence Report concludes in paragraph (89) that Commerce has suffered no loss because of the subrogation and is not entitled to reimbursement for the no fault

financially in any way from this fraud. To the contrary, Mr. Illingsworth who received all of the money was never charged with an offense and was never ordered to pay one cent of restitution. The insurance company does in fact have civil remedies against him if it feels it can prove the entire claim was a fraud.

The defendant respectfully requests that the amount of restitution to Premier Insurance Company be reduced by $8,000 to $10,000 and the defendant's obligation to pay restitution be adjusted accordingly.

Date: 12/8/04

THE DEFENDANT,
By his Attorney,

Michael O. Jennings
73 Chestnut St.
Springfield, MA 01103
BBO# 251340

# AFFIDAVIT

"A"

I, Charles K. Bergin Jr., being sworn and depose state the following:

1. I am an attorney and member of the bar of the Massachusetts Supreme Judicial Court, (1965), the United States District Court (District of Mass), (1968), and the United States Court of Appeals First Circuit (1971).

2. I have confined my practice to the trial of cases in the State and Federal Courts and have over thirty-five years of trial experience having successfully tried to verdict over 225 cases as well as hundreds of other non-jury cases.

3. I have represented both defendants and plaintiffs in civil litigation ranging from traditional personal injury cases, to complex civil litigation ranging from products liability, medical, legal and professional malpractice, explosions, wrongful death actions and complex business litigation such as commercial fraud, RICO, and shareholder derivative actions.

4. I have been professionally recognized as a trial lawyer with induction into fellowship in the American College of Trial Lawyers, (1985). I am also a Fellow in both the American and Massachusetts Bar Foundations. As a result of my diversified trial practice and peer recognition, I have enjoyed a double listing in The Best Lawyers in America, for both personal injury and business litigation since its inception in 1988. I was recently named in the first edition 2004 as a Massachusetts Super Lawyer in the field of plaintiff's personal injury litigation.

5. In addition to my trial practice I have mediated and/or arbitrated cases at the request of both counsel and members of the bench from both the State and Federal Courts. I have also qualified as an expert witness in legal malpractice cases for both defendants and plaintiffs

6. In the case of United States v. Carmen Romeo, I have reviewed the October 24, 2000 settlement demand letter on behalf of Todd Illingsworth from Attorney Scibelli submitted to the Premier Insurance Company regarding the accident of January 18, 2000 involving their insured, Karen L. Moriarty. I also reviewed the discharge summary dated August 17, 2000 from Dr. Kusiak to Attorney Scibelli concerning his care and treatment of Todd Illingsworth for the injuries he sustained in the accident. In addition I have reviewed the Government's sentencing memorandum.

7. I have been asked to give an opinion based upon a reasonable degree of legal certainty, whether the aforementioned Illinsworth personal injury case had any settlement value, assuming that at the time of settlement it were known, that contrary

to plaintiff's representations, he did not miss twenty weeks of work with an approximate $17,000.00 wage loss.

8. In my opinion based upon a reasonable degree of legal certainty, the case still had a settlement value for the following reasons.

   a. In Massachusetts the component elements of damages consists of compensation for reasonable and necessary medical expense incurred as a result of the accident, any loss of earning capacity, and the consequential damages consisting of pain and suffering, disability and interference with the ability to enjoy life. Thus, even if you eliminate one of the elements of damage, namely a loss of earning capacity, the other components remain. Moreover it has been my experience both as an arbitrator and trial lawyer that many people for whatever reason who have been injured in accidents continue to work at their jobs and those cases still have resulted in settlements or awards. However, without a wage loss component, of necessity, the full value of the case has to be discounted and I have done so.

   b. In reviewing the medical records, and assuming the truth of the doctors findings, I noted, that while the plaintiff gave a subjective history of neck and back pain, the Doctor reported his physical examination was consistent with cervical and back strain injuries. He noted limitation of motion which is an objective finding by the doctor corroborating the subjective complaints. More objectively he was prescribed ibuprofen and Flexeril for his pain and spasm. Spasm is a classic objective medical finding confirming cervical or lumbar strain. The Doctor notes further in his report that he had to prescribe Valium for his muscle spasm and again based upon objective findings of a restricted range of motion prescribed a program of physical therapy. While a patient may feign symptoms, based upon my review of thousands of medical reports, numerous preparations of Doctors for testimony and my understanding of the medical literature, muscle spasms are objective, painful and cannot be faked. Even as of February 29, 2000 the doctor notes, plaintiff still had sufficient pain, limitation of motion that the doctor placed the plaintiff "on the potent, once-a-day anti-inflammatory, Celebrex." While the neck became asymptomatic as of April the plaintiff still had ongoing low back pain and was evaluated by two other Doctors, Dunbar and Gotta, who diagnosed muscular pain sufficient to warrant steroid injection to the lumbar paraspinal muscles. Steroid injections are not conservative therapy and generally only undertaken when conservative modalities fail. The doctor concluded that plaintiff had some form of disability until June 2, 2000 when following the steroid injections the low back improved. I have eliminated the Doctors period of total disability from my evaluation as plaintiff was working.

   c. Therefore based upon the objective medical findings, if I were hearing this case as an Arbitrator, I would have to find that the medical expenses of $4,568.48 were reasonable necessary and causally related to the accident. In addition, based upon the objective medical findings and the nature and extent of the reasonable

and necessary treatment, I would have to find that the plaintiff sustained a period of partial disability and pain and suffering from the Date of the accident January 18, 2000 to June 2, 2000.

d.  In my experience, both insurance companies and attorneys assign a subjective value for each week of total and each week of partial disability and that has been happening since I started a civil trial practice in Springfield in 1967. After assigning a value to the partial and or total disability periods the special damages of medical expenses and loss of earning capacity is then added on to determine a total value for the case. Even conservatively assigning a value of only $500.00 per week for each week of the medically verified partial disability in this case would amount to $10,000.00 plus the medical of $4,468.48 for a total value of $14,468.46.

e.  The settlement that was made in the amount of $18,000 barely covered the fraudulent wage claim of $17,100.00.

f.  As an arbitrator hearing this case my award would be in a range of between $10,000.00 and $12,000.00. However as a trial lawyer representing a client, I am mindful that insurance companies, in my experience, further discount the value of soft tissue injuries, such as were in involved in this case. Therefore, as a trial lawyer I would discount the fair value of the case further in order to effectuate a mutually acceptable settlement agreement. Therefore, based upon the foregoing analysis, my opinion, based upon a reasonable degree of legal certainty, under all of the assumed facts and the circumstance of a fraudulent claim of wage loss, and eliminating the wage loss component, the case still had a settlement value in a range of between $8000.00 to $10,000.00.

Subscribed and sworn to under the pains and penalties of perjury December 8, 2004

_____
Charles K. Bergin, Jr. Esq.

## CERTIFICATE OF SERVICE

I, Michael O. Jennings, counsel for the defendant Carmen Romeo, hereby certify that I have on this ninth day of December, 2004 served a copy of the above document in hand on Assistant United States Attorney William M. Welch II at the United States Distract Courthouse in Springfield, MA.

MICHAEL O. JENNINGS